The GRAY PANTHERS, et al.

v.

Richard S. SCHWEIKER, Secretary, Department of Health, Education and Welfare, Appellant.

The GRAY PANTHERS, et al.

v.

Richard S. SCHWEIKER, Secretary, Department of Health, Education and Welfare, Appellant.

Nos. 82–1856, 82–2098.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 11, 1983.

Decided Aug. 19, 1983.

Mark H. Gallant, Atty., Dept. of Justice, Washington, D.C., with whom Stanley S. Harris, U.S. Atty., William Kanter, Atty., Dept. of Justice, Juan A. del Real, Gen. Counsel, Lynne K. Zusman, Deputy Gen. Counsel, Henry Goldberg and Henry Eigles, Dept. of Health and Human Services, Washington, D.C., were on brief, for appellant.

Sally Hart Wilson, Los Angeles, Cal., of the Bar of the Supreme Court of the State of Cal., pro hac vice, by special leave of the Court, with whom Bruce M. Fried and Daniel R. Ohlbaum, Washington, D.C., were on brief, for appellees. Burton D. Fretz, Washington, D.C., and Gill W. DeFord, Los Angeles, Cal., also entered appearances for appellees.

Before MIKVA and GINSBURG, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

Special concurring opinion filed by Senior Circuit Judge MacKINNON.

MIKVA, Circuit Judge:

This class action, originally filed by the Gray Panthers and various named beneficiaries of the Medicare program in 1977, is before this court for the second time. In our first decision, we concluded that procedures adopted by the Department of Health and Human Services (HHS or Department) to resolve disputes involving Medicare program benefits of less than $100 did not comport with due process requirements. *See Gray Panthers v. Schweiker (Gray Panthers I)*, 652 F.2d 146 (D.C.Cir.1981) (as amended on rehearing). Specifically, we held that the written form initially used to notify beneficiaries that their claims are being denied and the paper hearing provided to those beneficiaries who seek review of this initial decision were inadequate procedural safeguards given the elderly and infirm population that seeks Medicare reimbursement for medical expenses. The court left the precise contours of the notice and hearing required by due process for further formulation, however, remanding the case to the district court and directing that both parties cooperate in efforts to devise an appropriate answer to the query "what process is due."

On remand, the district court made a faithful attempt to adhere to this court's mandate. First, it considered but rejected most of the revised procedures that were proposed by HHS. Second, it concluded that a written notice proposed by the Gray Panthers, as well as the availability of an informal, yet face-to-face, hearing between each beneficiary and the decisionmaker for his or her claims, was required in every case. Finally, the court ordered that these oral hearings be provided retroactively to any member of the class, dating back to March 1976, who requested such relief in response to a nationwide mailing that would inform class members of their newly-vindicated procedural rights.

Subsequent to the district court's decision, but prior to oral argument before this court, HHS approved a revised notice form that may well satisfy many of the demands of due process. Thus, notwithstanding the confusion generated by the timing of the Department's actions, and our hesitation in prolonging this litigation, we find it necessary to remand this new written form to the district court for initial consideration. Moreover, because the district court misinterpreted our earlier decision when considering the extent of oral hearings that may be required, we also must remand that issue for redetermination. Finally, the appropriate scope of retroactive class relief that might be warranted, itself dependent on the district court's conclusions on the notice and hearing issues, also must be remanded for disposition consistent with this opinion.

## I. BACKGROUND

### A. Factual and Statutory Setting

The factual and statutory issues underlying this ongoing dispute are explained adequately in this court's previous opinion, see Gray Panthers I, 652 F.2d at 149–55, and therefore will be summarized only briefly at this time. The Gray Panthers is a national organization which represents elderly citizens, many of whom are enrolled in the Medicare program. The three named plaintiffs who remain in this class action also are enrolled in the Medicare program; more important, they each have been refused a requested oral hearing after being denied reimbursement on Medicare claims for under $100.

The Medicare program, 42 U.S.C. §§ 1395–1395vv (1976 & Supp. V 1981), is administered by the Secretary of Health and Human Services (Secretary) and consists of two parts. Part A provides insurance coverage for the cost of institutional health services; Part B consists of a voluntary supplemental insurance program that covers a percentage of the costs associated with most other medical procedures. Because many more claims for under $100 are found in the Part B program, and because

the dimensions of Part B—encompassing some 30 million participants and federal outlays of over $12.3 billion in the last fiscal year—are so large, the parties have focused their arguments on the notice and hearing procedures used under that aspect of Medicare. It should be noted, however, that the determination and review procedures being challenged are substantially similar for Parts A and B.

In fact, both parts are administered by private insurance companies, referred to as "intermediaries" under Part A and "carriers" under Part B, which have signed contracts with the Secretary. Claims for payment or reimbursement are submitted to the intermediary or carrier for an initial decision that is communicated to the Medicare beneficiary through a written notice. If the claim is denied in whole or in part, and the beneficiary is dissatisfied with this initial determination, a request for reconsideration or review can be made. Thereafter, the beneficiary may submit additional written information, and either the Health Care Financing Administration under Part A or a different employee of the carrier under Part B will make another decision based on this paper hearing. For any losing individual whose remaining claims against the Medicare program amount to less than $100, this second decision grounded solely on their initial claim and later paper submissions is final and nonreviewable. See 42 C.F.R. §§ 405.-701–.750 (1982) (reconsideration and appeals procedures under Part A); id. §§ 405.-801–.872 (review and hearing procedures under Part B; see also id. §§ 405.-740, .820(b) (defining computation of $100 amount in controversy under Parts A and B, respectively). See generally United States v. Erika, Inc., 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982) (upholding as consistent with the statute the preclusion of judicial review after a determination of benefits payable under Part B); Schweiker v. McClure, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982) (upholding as consistent with due process the use of employees of the private insurance carriers as decision-

makers in Part B hearings for claims over $100).

Thus, regulations adopted by the Secretary do not provide for any type of oral hearing when the amount in controversy is less than $100. Indeed, until this court's decision in *Gray Panthers I,* it was thought that the 1972 enactment of 42 U.S.C. § 1395ff(b)(2) (1976) and 42 U.S.C. § 1395u(b)(3)(C) (1976) actually dictated that only written review procedures could be included in the regulations. The plain language of those subsections, in fact, eliminates the availability of "hearing[s]" to claimants seeking less than $100 under Part A and Part B, respectively. But as this court held during the first phase of this litigation, *see* 652 F.2d at 150–52 & n. 15, these statutory provisions were intended by Congress only to eliminate the expense and inconvenience of "formal hearings" or "full fair hearings" when such small amounts are in controversy. Rather than preempting any rights to an oral hearing completely, "the statute reduces the process due to the minimum constitutional requirements," *id.* at 152; *cf. Califano v. Yamasaki,* 442 U.S. 682, 693, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979) (courts should be "willing to assume a congressional solicitude for fair procedure, absent explicit statutory language to the contrary"). Therefore, these statutes do not foreclose the use of oral hearings and the Secretary's implementing regulations will not meet the directives of Congress unless and until they satisfy the demands of due process.

## B. *Prior Judicial Proceedings*

The complaint initiating this litigation was originally filed in March 1977, prior to this court's interpretation of the underlying statutes. It thus was premised on a constitutional challenge to the statutory provisions themselves. Specifically, the complaint requested, *inter alia,* a declaratory judgment that the denial of an oral hearing to all Medicare beneficiaries claiming less than $100 in reimbursement was unconstitutional and an injunction ordering HHS to provide a "fair hearing" for any plaintiff requesting one. After some preliminary discovery between the parties, the individually named plaintiffs moved to certify a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure. That motion—seeking a class consisting of all Medicare recipients who, within the year immediately preceding the filing of the lawsuit (i.e., since March 21, 1976) or at any time after its filing, had been denied oral hearings concerning Medicare claims of less than $100—was granted by the district court on November 21, 1977. *See* Order Certifying Class Action, *reprinted in* Joint Appendix (JA) 598. There apparently was no opposition from HHS on the issue of class certification at that time.

After extended proceedings culminating in cross-motions for summary judgment, the district court ruled in favor of HHS. *See Gray Panthers v. Califano,* 466 F.Supp. 1317 (D.D.C.1979). In short, the court concluded that the notice and paper hearing provided by the Department satisfied the three-factor balancing test established by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (balancing the private interest affected, the risk of an erroneous deprivation using current procedures and the value of additional safeguards, and the public interest at stake). That decision was appealed to this court, with arguments focused on whether oral hearings were required before Medicare claims for under $100 could be conclusively denied. No cross-appeal concerning the class certification was filed by the Department, however; in fact, there was little if any mention of the scope of the plaintiff class during that first appeal.

Noting that the Secretary had conceded that the medical expense payments distributed under the Medicare statute are a property interest protected by the Constitution, *see* 652 F.2d at 148 n. 2, 152 & n. 14; *see also O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 786–87, 100 S.Ct. 2467, 2475–76, 65 L.Ed.2d 506 (1980), the issue before this court during the first appeal was whether the Secretary's current regulations include whatever procedural safeguards are minimally required by due proc-

ess. On this issue, the court clearly held that the regulations "presently provide[ ] insufficient protection of appellants' due process rights." 652 F.2d at 148; *see id.* at 158 ("due process requires a procedure that provides more of an opportunity to be heard than the present notice and paper hearing procedures allow"); *id.* at 166 ("[w]ithout some additional improvements, . . . we are unable to hold that the current procedures meet the due process minimum").

The court also provided a long discussion explaining the values furthered by oral hearings. *Id.* at 158–63. At the same time, however, we explicitly refused to "rule that the Secretary must always provide an oral hearing in under-$100 cases in order to meet due process requirements." *Id.* at 159. Instead, noting only that procedures must meet the "core requirements of due process—adequate notice of why the benefit is being denied and a genuine opportunity to explain why it should not be", we emphasized that "no component of a procedure can be analyzed independently of the others." *Id.* at 165. This interdependence among due process requirements, stemming largely from the interplay that exists between the adequacy of a notice and the formality of a subsequent hearing, means that the minimal requirements for notice and hearing in any given case cannot always be defined separately. Thus, a flexible approach that considers the interrelationship between notice and hearing requirements is desirable, and was applied directly to the present case in this court's first opinion:

Although much of this opinion focuses on the advantages of providing oral hearings in cases such as this, we do not hold that oral process is always due in Medicare review proceedings. Our extensive discussion of oral hearings stems from the way in which the parties structured their arguments as to the adequacy of the present procedures for review of small claims, and in particular, appellants' specific claims for relief. However, the appellants argued before both this and the trial court that the need for an oral hearing derived in part from deficiencies in the Secretary's current notice provisions. Our remand to the district court allows the Secretary to propose changes in this as in other aspects of the present paper hearing procedures; the district court may accept these changes as an alternative to oral hearings if it believes they will cure the deficiencies we have noted in the present procedures.

*Id.* at 148 n. 4.

Our previous opinion also set forth some specific shortcomings found in the notice and hearing procedures currently in existence. First, we noted that the Explanation of Medicare Benefits (EOMB) form utilized by most carriers when they deny Part B claims is not sufficiently clear. In particular, the form does not specify whether a claim is being denied because the treatment was unnecessary or because the charge was unreasonable; nor does it explain whether any overcharges that did occur resulted from a provider being more expensive than others in the locality or from a provider charging a beneficiary more than other patients. *Id.* at 153 n. 16, 167–68. Second, we noted that the form's invitation to place a telephone call to the carrier for further information is of little help because no one with decisionmaking authority, or even possessing familiarity with the facts of the particular claim, will be answering the call. *Id.* at 157 & n. 22, 169 n. 50. Finally, we emphasized that the positive values attributable to oral hearings are especially significant, if not almost mandatory, when issues of credibility or veracity are at issue. *Id.* at 161, 169–71; *see also id.* at 172 (when "factual issues involving the credibility or veracity of the claimant are at stake, particular consideration of a policy granting on request an oral interview before the final denial on reconsideration should be given"). Except for these specific directives, however, much leeway was retained by the district court on remand to define the minimal requirements of due process.

Several weeks after this court's opinion was issued, the district court ordered HHS to submit a written proposal for resolving the case. *See* Order of May 21, 1981, *re-*

*printed in* JA 4. Pursuant to this order, on July 17, 1981, the Department submitted a plan embodying the agency's proposals for changes in carrier operations under Part B. *See* JA 5–17. That plan included only minor revisions to the EOMB notice form utilized by the carriers, combined with the addition of a toll-free telephone system. Under that system, a beneficiary could call his or her carrier with general questions about the Medicare program, the EOMB form, and the availability of appeal rights. If specific inquiries concerning his or her particular claim were made, the case would be referred to a professional staff employee, who would examine the carrier records and return a call to the beneficiary to discuss the claim. This second telephone conversation would be summarized and reduced to writing by the carrier employee and made part of the record for the carrier's ultimate review of the claim. Finally, it should be noted that this telephone system was to be applied to Part B claims only; Part A claims requesting under $100 were thought to occur too infrequently to justify any additional procedures.

In response, the Gray Panthers provided a step-by-step critique of this initial plan. Because only cosmetic changes were made to the EOMB notice form, and because there already existed a telephone system through which beneficiaries could ask general questions of their respective carriers, *see* 652 F.2d at 157, 169 n. 50, the Gray Panthers interpreted the Secretary's plan as adding only a second-tier telephone call to the existing system. This second phone call, although involving a carrier employee familiar with the particular claim, would not be a face-to-face meeting with the ultimate decisionmaker. Thus, the Gray Panthers believed that both the notice and hearing procedures proposed by the Secretary remained constitutionally inadequate. In their stead, they suggested that this court's mandate could best be met through the adoption of a greatly enhanced written notice and the continuation of written review procedures, to be followed by an informal, but oral and face-to-face confrontation with the carrier decisionmaker for any ben-

eficiary who requests one. To foster such a proposal, the Gray Panthers enlisted several language and computer experts to develop an improved written notice form that would be both informational and comprehensible to the elderly and infirm population served by the Medicare program.

By the beginning of 1982, the Gray Panthers and their experts had produced this new notice form. *See* Record Document (RD) 76, *reprinted in* Brief for the Appellees, Appendix A. Also by this time, another EOMB form had been designed by the Department to replace the form currently being used. *See* RD 79, Appendix Item 4, *reprinted in* JA 226–28 and Brief for the Appellees, Appendix B. Both parties, however, adhered to their respective views concerning the type of hearing required by due process. After some futile attempts to negotiate their differences, the district court was asked to decide between the conflicting proposals for revised notice and hearing procedures.

The district court issued its decision, accompanied by extensive findings of fact and conclusions of law, on September 10, 1982. *See* JA 599–613. In that decision, the Department was ordered to revise its Medicare system by incorporating the Part B notice form proposed by the Gray Panthers and by providing for informal oral hearings for all Part A and Part B beneficiaries who have less than $100 in dispute. To support this comprehensive remedy, the court first noted that the Department's proposal with respect to the Part B notice form was to use essentially the same notice that already had been rejected by this court. Those minor changes that the Secretary did suggest failed to ensure that the form would meet general principles of comprehensibility; nor did the revised EOMB form explain the basis for a finding of unnecessary or unreasonable charges. In contrast, the form proposed by the Gray Panthers met these minimum requirements. Thus, faced with a Department proposal that clearly remained inadequate and an alternative proposal that clearly met the concerns previously identified by this court, the district court had

little hesitation in choosing the latter over the former.

As for the hearing component of due process, the court concluded that the telephone system proposed by the Secretary "wholly fails" to meet the problems earlier identified by this court. Thus, after finding that informal oral hearings at the third stage of review (i.e., after notice and written review procedures) would be requested in only a small percentage of cases, the district court again adopted in full the proposal made by the Gray Panthers and ordered that such hearings be available for all beneficiaries.

The remainder of the district court opinion decided issues stemming from its earlier class certification. In fact, throughout the district court proceedings on remand, the parties expended much energy disputing the November 1977 class certification that previously had gone unchallenged by HHS. Soon after the case was remanded to the district court in 1981, the Department moved to amend, pursuant to either Rule 60(b)(6) or Rule 23(c)(1) of the Federal Rules of Civil Procedure, the earlier order certifying the class action. Specifically, HHS argued that (1) only prospective relief should be awarded because of the burdens inherent in reprocessing old Part B claims and (2) Part A beneficiaries should be eliminated from the class because none of the individual plaintiffs had filed Part A claims and because the small number of such claims affected by the case did not warrant the inevitably large administrative costs that would result. The Gray Panthers, in turn, opposed any amendment to the class, arguing that no extraordinary circumstances justified any deviation from prior certification orders that were final and constituted the law of the case.

In a preliminary order, the district court denied the Department's motion. *See* Order and Memorandum of October 22, 1981, *reprinted in* JA 153–61. First, to the extent that Rule 60(b)(6) was applicable, the court found no extraordinary circumstances justifying modification of a previously final judgment. Second, under Rule 23(c)(1), the court concluded that a "decision on the merits" of the class certification already had been finalized, and thus the class was "not amendable under this rule." JA 156–57. On this score, the court chastised the Department for not filing a protective cross-appeal on the class certification when the case was first appealed to this court. Alternatively, assuming that it did have the authority to reconsider its earlier class certification, the court ruled that the small number of Part A claimants warranted their inclusion in the class and that any manageability or cost problems that result from the size of the retroactive class under Part B could be cured by the method chosen to notify the class of potential relief.

In keeping with this latter concern, the district court's final decision provided that the availability of retroactive relief would be announced in a one-time-only direct mailing to all Medicare beneficiaries. *See* JA 601–02, 614. The announcement was drafted, with the assistance of the parties, to ensure that an avalanche of frivolous inquiries would not be forthcoming. Specifically, if certain items of requested information were not provided by a responding class member—including the date, amount, and insurance company for the denied claim—then the Department could deny that individual an informal oral hearing without independently checking the validity of the response. Under an earlier order of the court, this notice was to be mailed to all potential class members by November 26, 1982. *See* Order of May 25, 1982, *reprinted in* JA 593. Finally, also as a means of limiting the burdens that might result from the relief ordered, the court concluded that, although claimants under Part A are entitled to the same oral hearings as those under Part B, no revisions to the substantially different Part A notice forms would be required.

In sum, the district court orders now being reviewed would require that the Department adopt the Part B notice form proposed by the Gray Panthers, provide informal oral hearings at the third stage of review for all Part A and Part B beneficiar-

ies disputing less than $100, and inform all members of the class, dating back to March 1976, of their retroactive hearing rights through a mailed announcement. After the Department filed an emergency motion for the entry of an immediate stay pending appeal, a motions panel of this court granted a stay, but only to the extent that the district court decision required HHS to provide informal oral hearings. *Gray Panthers v. Schweiker,* Nos. 82–1856 & 82–2098 (D.C. Cir. Oct. 14, 1982) (per curiam). Three weeks later, Chief Justice Burger, sitting in his capacity as Circuit Justice, stayed the remainder of the district court's decision pending final disposition of this appeal. *Schweiker v. The Gray Panthers,* No. A–397 (Burger, Circuit Justice, Nov. 4, 1982).

Soon after this second stay was issued, the Secretary unilaterally began to implement yet another proposed notice form. This most recent attempt to improve upon the EOMB form currently being used was never submitted to the district court and was not submitted to this court until HHS filed its reply brief in this case. *See* Reply Brief for the Appellant, Addendum B. The Department nonetheless claims that this latest form is a comprehensive yet still fully automated EOMB notice that might satisfy the demands of due process. By an order of this court issued after oral argument, a motion by the Gray Panthers to strike this latest form from the court's records was denied.

## II. DISCUSSION

The long procedural history that underlies this appeal is neither unique nor unexpected. Nevertheless, it forcefully reminds us that defining the minimum requirements of due process and applying those requirements to a specific factual situation is an inherently difficult task. The task in this case is made even more difficult because it has been brought as a class action suit that is intentionally designed to affect public policies and procedures on a nationwide basis. Professor Abram Chayes, in one of the earliest scholarly dissertations on the role of the courts in "public law litigation," seemed to have this case in mind when he discussed the role of the judge in prescribing the proper remedy:

> In the remedial phases of public law litigation, . . . the contours of relief are not derived logically from the substantive wrong adjudged, as in the traditional model [of adjudication]. The elaboration of a decree is largely a discretionary process within which the trial judge is called upon to assess and appraise the consequences of alternative programs that might correct the substantive fault. In both the liability and remedial phases, the relevant inquiry is largely the same: How can the policies of a public law best be served in a concrete case?

Chayes, *The Role of the Judge in Public Law Litigation,* 89 HARV.L.REV. 1281, 1296–97 (1976) (footnote omitted). To formulate an appropriate remedy under these circumstances, Professor Chayes and others have emphasized the role to be played by negotiation between the parties, thereby minimizing the need for judicial resolution of these intractable issues. Only in limited circumstances, such as when the parties cannot reach agreement, or when good faith bargaining between the parties does not occur, or when interests unrepresented by any party to the litigation are not being protected, will the court assert its responsibility and impose its own views. And, of course, the court always must ensure that the requirements of the underlying substantive law are being met. *See generally* Chayes, *supra,* at 1298–1302; Chayes, *The Supreme Court, 1981 Term—Foreword: Public Law Litigation and the Burger Court,* 96 HARV. L.REV. 4 (1982); Fiss, *The Supreme Court, 1978 Term—Foreword: The Forms of Justice,* 93 HARV.L.REV. 1 (1979); Fletcher, *The Discretionary Constitution: Institutional Remedies and Judicial Legitimacy,* 91 YALE L.J. 635 (1982).

A thorough reading of the record in this case demonstrates that the district court admirably fulfilled these responsibilities. Faced with two parties who could agree on little, the court first attempted to have the parties eliminate some of those differences through negotiation. The eventual failure

of these negotiations meant that the court had to address the remaining differences and issue a decision. It did so by weighing the competing arguments and proposals made by the parties, and by applying what it believed was this court's mandate in *Gray Panthers I*. To this extent, the district court deserves credit for its managing of this case.

Unfortunately, intervening events over which the district court had little control require that we remand another EOMB notice form to that court for initial consideration. Also, because the court misunderstood the scope of its authority concerning the hearing component of due process and the proper reach of retroactive relief, we also must remand those issues for reconsideration. Indeed, such a remand would be necessary if only because of the unavoidable interdependence among the three issues presented on this appeal.

## A. *Notice*

■ "It is universally agreed that adequate notice lies at the heart of due process." *Gray Panthers I*, 652 F.2d at 168 (citation omitted). In rejecting the EOMB form used under current HHS procedures, this court already has held that due process cannot be satisfied unless there are significant improvements in the notice given to Medicare beneficiaries when Part B claims are denied. The court also has explained in detail to the Secretary some of the improvements required before a new notice form would be approved. *See supra* p. 28. Moreover, the Department has been keenly aware, at least since our first opinion in this case, that the scope of hearings required before final decision on a claim is dependent to some extent on whether the original notice provides a "precise indication as to why [a particular] claim [is] being denied." *Id.* at 156.

Despite this more than adequate "notice" to the Secretary, on remand the Department proposed only slight modifications to the EOMB form previously rejected. *Compare* JA 16–17 (EOMB form currently in use) *with* JA 226–28 (EOMB form proposed to district court). Those changes make the form somewhat less confusing, but do little to address the particular problems that this court identified in the old form. Specifically, the proposed form still fails to distinguish between unnecessary and unreasonable charges, or to explain the basis for a finding of unreasonableness. Indeed, the Secretary has admitted this much by arguing that sufficient notice is provided to a beneficiary not by the EOMB form itself, but through the combined effect of the written form and verbal supplementation available, if the beneficiary initiates contact with the insurance carrier, through the toll-free telephone system. The district court detailed why even this combination would not provide adequate notice, *see* JA 602–04, and we agree with that conclusion. *See Vargas v. Trainor*, 508 F.2d 485, 489–90 (7th Cir.1974) (written notice that needs supplementation through action by recipient does not satisfy due process), *cert. denied*, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975). Given the "fundamental" requirement that "notice ... clearly inform the individual of the proposed action and the grounds for it," Friendly, *"Some Kind of Hearing"*, 123 U.Pa.L.Rev. 1267, 1280 (1975), the written notice used to respond to Part B Medicare claims must include a thorough and understandable explanation for any denial of benefits.

Faced with an inadequate proposal from the Secretary, and an alternative proposal from the Gray Panthers that undoubtedly met the directives of this court, the district court ordered the Department to implement the only available form that would satisfy the demands of due process. Given the status of the case at that time, we cannot say that the court erred in not requiring the Secretary to propose still another, but hopefully improved, version of its EOMB form. Since then, however, the Department has begun implementation of another form that it claims is both feasible and constitutionally adequate. Issued pursuant to what the Department terms its "administrative discretion" after extra monies were appropriated by Congress in the continuing resolution for fiscal year 1983, this latest form

will utilize a new computer program that contains more than twice the number of explanatory messages included in the present form. *See* Affidavit of Dennis Siebert, Acting Director, Bureau of Program Operations, Health Care Financing Administration, *reprinted in* Reply Brief for the Appellant, Addendum B. Among these improvements are thirteen messages explaining "medical necessity," and at least a facial attempt to distinguish between customary and prevailing charges as the basis for a finding of unreasonableness. Thus, because at first glance this latest form appears to satisfy many of the concerns we have previously identified, we remand it to the district court for initial consideration. *But see* Reply to Appellant's Opposition to Motion to Strike at 3 n. 1 (suggesting that this form does not meet the specific directives of *Gray Panthers I*). After further submissions from both parties, the district court in the first instance should decide whether this latest form satisfies the stringent notice requirements of due process. If it does not, the court should use this form as a basis for ordering the Secretary to make whatever additional improvements are needed until the form provides Medicare beneficiaries with the adequate notice mandated by the Constitution.

The Gray Panthers, both in their motion to strike this latest form and during oral argument before this court, understandably argue that considering this proposed form at such a late stage in the proceedings is inherently unfair. Although the Secretary notes that monies to implement the form have just recently become available, there is record evidence demonstrating that the form has been circulating within the Department for many years. Moreover, the Secretary apparently mentioned the proposed form during the district court proceedings only once, *see* Affidavit of Jean A. Harris, *reprinted in* RD 66 (noting vaguely that "samples of alternative proposals" had been circulated to interested groups), and never submitted a copy of the form to that court.

We previously have emphasized that counsel are required to inform the courts of outside developments that might affect the outcome of litigation. *See Douglas v. Donovan,* 704 F.2d 1276, 1279–80 (D.C.Cir. 1983). And counsel for the government, no less than their colleagues in the private sector, are bound by the same obligations to the court. There is, indeed, much to suggest that government counsel have a higher duty to uphold because their client is not only the agency they represent but also the public at large. *Cf.* Model Code of Professional Responsibility EC 7–14 (1981) ("A government lawyer in a civil action . . . has the responsibility to seek justice and to develop a full and fair record, and he should not use his position or the economic power of the government to harass parties or to bring about unjust settlements or results.").

■ Notwithstanding our concern about the government's timing and tactics, the nature of this particular litigation requires that the latest EOMB form proposed by the Secretary be considered by the court. In a traditional case between two private parties, the failure by one of those parties to raise a relevant development usually would foreclose that party from relying on that change in circumstance during the remainder of the litigation. In the context of litigation that is intentionally brought as a class action aimed at affecting public policy, different ground rules may have to be applied. Numerous cases have recognized that intervening changes made by the executive or legislative branches, and particularly by administrative agencies exercising their discretion to improve government programs, may alter the course of litigation midstream. *See, e.g., Richardson v. Wright* 405 U.S. 208, 209, 92 S.Ct. 788, 789, 31 L.Ed.2d 151 (1972) (per curiam) ("In the context of a comprehensive complex administrative program, the administrative process must have a reasonable opportunity to evolve procedures to meet needs as they arise."); *cf.* Chayes, *supra,* at 1294 ("relief [in public law litigation] is not a terminal, compensatory transfer, but an effort to devise a program to contain future consequences in a way that accommodates the range of interests involved"). Thus, the

Gray Panthers and the public interest bar in general must recognize that sudden shifts in policy—including the exact shifts that the litigation was intended to effect—may occur devoid of any specific time frame. This is especially true when, as here, the case involves millions of dollars and affects the allocation of limited financial resources. Although budgetary constraints cannot by themselves excuse a failure to meet constitutional requirements, *see Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976) ("[f]inancial cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard"); *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 620–21 (D.C.Cir. 1976) (Leventhal, J., concurring), they can be a proper consideration for courts trying to oversee the course of public law litigation. *Cf.* Frug, *The Judicial Power of the Purse*, 126 U.Pa.L.Rev. 715, 773–77 (1978) (discussing the relevance of cost in procedural due process cases).

Thus, we remand this latest EOMB form to the district court for initial consideration. Our willingness to do so stems from the practical necessities that attach to litigation affecting public programs and public budgets. Furthermore, even if we affirmed the district court decision and ordered implementation of the form proposed by the Gray Panthers, there is no doubt that the Department could request amendment of that order to incorporate its latest form—conditioned, of course, on a finding that the form meets constitutional standards. Our remand to the district court has the same effect, except that both the court and the Gray Panthers will have more of an opportunity to suggest specific changes to the form before it is finalized.

### B. *Hearing*

As we have indicated earlier, the type of notice and the type of hearing required by due process are intimately related when determining whether the constitutional minimum has been provided. *See supra* pp. 27–28; 652 F.2d at 148 n. 4, 165.

Our remand for final decision on the notice issue, therefore, might suggest that we should not reach the hearing issue at this time. But the district court concluded that informal oral hearings were required for all members of the class even after it adopted the notice proposed by the Gray Panthers—a notice which is probably more informative than the notice that eventually will be finalized on remand. Thus, it is necessary to decide in this appeal whether the hearings ordered by the district court are constitutionally compelled.

We begin our analysis where our prior discussion ended. In our conclusion to *Gray Panthers I*, we summarized what procedural protections are minimally required by due process in this context:

> We believe, at a minimum, the claimant should be informed of or have access to the evidence on which the carrier relied in reaching its initial decision to deny the claim and, within a reasonable time thereafter, *an opportunity to present evidence (in oral or written form) in support of his or her position. Where factual issues involving the credibility or veracity of the claimant are at stake, particular consideration of a policy granting on request an oral interview before the final denial on reconsideration should be given.*

652 F.2d at 172 (emphasis added). Each party emphasizes certain words from this paragraph, or other portions of our previous opinion, to reach the result which it supports. The Gray Panthers, noting that much of our previous opinion discussed the benefits stemming from oral hearings, argue that only informal oral hearings available to all beneficiaries would satisfy due process. The Department, noting the potential costs associated with such a requirement, argues that this court did not require a face-to-face meeting with the carrier decision-maker in every case. As a compromise, the Department has proposed a toll-free telephone system through which beneficiaries eventually would be able to speak with a carrier employee who is familiar with the particular facts of their disputed claim. *See supra* pp. 28–29. In general terms, therefore, both parties have

tried to interpret *Gray Panthers I* as providing a blanket rule that must be followed for every claim that is submitted by every member of the class. Such an "all-or-nothing" procedure, also evinced by the district court decision, is not ordained by our earlier decision.

What the above-quoted conclusion makes clear, we believe, is that the court in *Gray Panthers I* did not foresee that the same type of hearing would satisfy the minimum requirements of due process for all denied Medicare claims. Rather than an "either-or" analysis—which assumes that *either* oral hearings are always required *or* that oral hearings are never required—this court expected that a more particularized analysis of these Medicare claims would be necessary. Specifically, for cases "[w]here factual issues involving the credibility or veracity of the claimant are at stake," 652 F.2d at 172, the informal oral hearings ordered by the district court may be required by due process. *See also id.* at 161 ("an oral hearing provides a way to ensure accuracy when facts are in dispute, especially if credibility is an issue"); *id.* at 169–70 ("[o]ral hearings are peculiarly suitable to advance factfinding on issues which depend on the credibility and veracity of the claimant"). For other claims, however, where proper documentation has not been filed by the beneficiary, or where only arithmetic computations or similar disagreements are at issue, the Secretary's proposed toll-free telephone system combined with a full paper hearing would be sufficient. *See id.* at 170–71 (suggesting the possibility that all claims need not be treated identically); *cf. id.* at 158 n. 25 (noting that the district court was operating on an inappropriate "all-or-nothing" rationale when it previously considered the formality required in potential oral hearings). Thus, *Gray Panthers I* suggested a detailed approach that would result in informal oral hearings for some, but not all, of the disputed claims.

Such an interpretation of *Gray Panthers I* and its articulation of the types of hearings required by due process finds crucial support in the Supreme Court decision in *Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct.

2545, 61 L.Ed.2d 176 (1979). In *Yamasaki,* beneficiaries under the old-age, survivors', and disability insurance programs challenged the procedures followed by the Secretary when recouping erroneous overpayments made under those programs. The Court held that requests for reconsideration under section 204(a) of the Social Security Act, 42 U.S.C. § 404(a) (1976 & Supp. V 1981), do not require prerecoupment oral hearings because they usually involve straightforward issues of arithmetic. On the other hand, oral hearings are essential when requests for waiver are made under section 204(b), *id.* § 404(b), because these latter requests involve statutory standards requiring determinations of whether the claimant is at "fault" and whether recoupment is "against equity and good conscience." 442 U.S. at 695–97, 2554–56. Although *Yamasaki* was primarily concerned with the timing of a hearing because all affected beneficiaries eventually receive a formal hearing after recoupment, the dichotomy drawn by the Court between the two subsections of the recoupment statute illustrates a willingness to differentiate between similar claims when the distinctions drawn are relevant to whether oral hearings must be provided. We read *Gray Panthers I* as consistent with such an approach.

The *Yamasaki* decision also demonstrates another aspect of the flexibility necessary when the procedural requirements of due process are being defined. Specifically, for reconsideration hearings under section 204(a), the court of appeals had concluded that written review usually was sufficient because relatively straightforward matters of computation were involved in the vast majority of cases. *See Elliott v. Weinberger,* 564 F.2d 1219, 1231 (9th Cir.1977), *aff'd in part and rev'd in part sub nom. Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); *see also Mattern v. Mathews,* 582 F.2d 248, 255–56 (3d Cir. 1978), *cert. denied,* 443 U.S. 912, 99 S.Ct. 3101, 61 L.Ed.2d 876 (1979). But the appellate court declined to foreclose prior oral hearings in all reconsideration requests, noting that cases could arise in which the

credibility of the claimant was determinative. 564 F.2d at 1231. The Supreme Court reversed this portion of the circuit court's decision, concluding that "the rare instance in which a credibility dispute is relevant to a § 204(a) claim is [in]sufficient to require the Secretary to sift through all requests for reconsideration and grant a hearing to the few that involve credibility." 442 U.S. at 696, 99 S.Ct. at 2555; *see id.* ("nature of a due process hearing is shaped by the 'risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions' ") (quoting *Mathews v. Eldridge,* 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976)).

Under these standards, we conclude that *Gray Panthers I* requires the informal oral hearings ordered by the district court, but only in cases involving credibility or veracity. If the total number of those cases is quite small, however, the adoption of procedures allowing for informal oral hearings is not warranted. Indeed, the Department has argued before this court that credibility or veracity are determinative in only a small percentage of the under-$100 claims that are filed. *Compare Gray Panthers I,* 652 F.2d at 170–71 & n. 52 (noting that claims for waiver under 42 U.S.C. § 1395pp (1976 & Supp. V 1981) involve issues of credibility or veracity) *with* Brief for the Appellant at 52 & n. * (arguing that these cases are similar to the "rare instance" identified by the Supreme Court in *Yamasaki*). Given that neither the district court nor the Gray Panthers has previously focused on this precise issue, it is necessary to remand for a determination of the number of cases that *actually involve* credibility or veracity. If the district court concludes that the total number of cases so identified—under either 42 U.S.C. § 1395pp or other provisions that include cases involving issues of credibility or veracity—constitute no more than the "rare instance," then no informal oral hearings should be required. If, on the other hand, the district court identifies a sufficient percentage or number of cases that do involve factual determinations hinging on credibility or veracity, then it should order that informal oral hearings

must be provided for these cases. In this regard, the Gray Panthers should be given an opportunity on remand to demonstrate that other subcategories of claims also should be granted an informal oral hearing. Ultimately, however, the district court should impose an informal oral hearing requirement only after carefully scrutinizing any contention that a large number of cases involve credibility or veracity. Such a contention, we note, is easy to make, yet hard to disprove.

An eventual order requiring hearings for certain types of claims, moreover, should only be issued if the district court is satisfied that these cases are reasonably segregable from the remainder of the claims filed. *Cf. Yamasaki,* 442 U.S. at 696, 99 S.Ct. at 2555 ("some leeway for practical administration must be allowed"). Although the Department suggested during oral argument that it may be impossible to separate cases involving credibility and veracity from all other claims, we cannot simply accept this unproven contention. We note, for instance, that under the toll-free telephone system that will be implemented, a carrier employee will be returning a call to a beneficiary after reviewing the particular facts of the claim. This review procedure, focusing as it does on individual claims, could serve multiple functions—not only allowing the beneficiary to speak with a carrier employee who is familiar with his or her particular claim, but also serving as a means of identifying exactly which claims are deserving of an oral hearing. Alternatively, the carrier decisionmaker who denies a claim after a written review is completed can be required, under regulations eventually issued by the Secretary, to identify those claimants who have the right to an oral hearing. Indeed, such regulations could provide that the carrier is obligated, during this second phone contact or after the paper hearing, to inform beneficiaries of their right to an informal oral hearing if their particular case falls within one of the categories, such as those involving credibility or veracity, that require such hearings. *Cf. Schweiker v. McClure,* 456 U.S. 188,

196–97, 102 S.Ct. 1665, 1670–71, 72 L.Ed.2d 1 (1982) (concluding that carrier employees are presumed to be unbiased because, *inter alia,* the administrative costs and medical reimbursements under Medicare Part B are paid out of federal funds and the carriers are subject to regulations and guidelines issued by the Secretary). Thus, it is the task of the district court on remand to identify those types of cases that require informal oral hearings and to ensure that procedures are adopted that will allow for ready identification of such claims.

Finally, as can be gleaned from our discussion, we believe that the toll-free telephone system proposed by the Secretary—when combined with the improved notice that will be implemented under Part A *supra* and the full written review procedures that currently exist—meets the dictates of due process for most of the claims at issue in this litigation. The Gray Panthers have lodged several attacks on the proposed telephone system, many of which have merit, but none of which require an outright rejection of the proposal. *Cf. Casey v. O'Bannon,* 536 F.Supp. 350 (E.D.Pa. 1982) (denying preliminary injunction against telephone hearings for applicants who are denied public assistance). First, they argue that the telephone system will not ensure that every claimant obtains a face-to-face meeting with a carrier decisionmaker. There is no doubt that this is true; in fact, this appears to be the principal reason cited by the district court for rejecting the telephone system and for ordering informal oral hearings in all cases. *See* JA 605. Under our interpretation of *Gray Panthers I* and the procedural requirements it identified, however, such a face-to-face meeting with the decisionmaker is not required for every claim. The telephone system will give many beneficiaries a chance to communicate orally with a carrier employee who is familiar with their particular claim, thereby improving the process somewhat for those beneficiaries who have trouble when they rely solely on written submissions or for whom a telephone is the most accessible means of communication.

The Gray Panthers also fault the proposed telephone system for leaving a crucial decision—i.e., whether a carrier employee familiar with the particular facts of the claim will return a call to the beneficiary—to the complete discretion of the carrier. At oral argument, however, counsel for the Department assured the court that there would be guidelines specifying when a second call back to the beneficiary must be made and leaving little, if any, discretion in the matter to the carrier itself. Our approval of the telephone system is conditioned on such guidelines, and the district court is to ensure that the Department follows through on these requirements when the Secretary eventually issues regulations that define and delimit the carrier's role in the telephone system.

Finally, the Gray Panthers argue that the proposed telephone system is overly burdensome on the elderly and infirm population with which we are concerned. Not only is it expected that 40% of the beneficiaries attempting to reach the toll-free number will receive a busy signal on their first try, but special problems exist for many beneficiaries trying to use a telephone because they have difficulty hearing or trouble comprehending a fast-paced telephone conversation. We do not mean to denigrate the concerns that the Gray Panthers raise—indeed, in response to these criticisms, we expect good faith efforts to be made by the Secretary to improve the telephone system in all ways that are feasible and practicable. But however much we might prefer, as a policy matter, to have face-to-face hearings mandated for all beneficiaries, we cannot say that the flexible requirements of due process are not satisfied by the complete procedural system that soon will be in place—including an improved written notice, the toll-free telephone system, and full written review procedures.

■ In sum, given the improved written notice that will be finalized according to our directions in part A *supra,* we believe that the combination of the toll-free telephone system proposed by the Secretary and full written review procedures satisfies the hearing requirements of due process for the

majority of Medicare claims involving less than $100. On remand, the district court should take steps to ensure that all practicable improvements in the telephone system are made and that the Department implements the guarantees it has made to this court. For a minority of cases, such as those in which credibility or veracity are determinative, it may be necessary to provide for informal oral hearings of the kind previously ordered by the district court. On remand, the court should ensure that such cases are both sufficient in number and reasonably segregable from the remainder of the claims to justify different treatment. Assuming that these conditions are met, the district court should issue a new order requiring the Secretary to implement the toll-free telephone system and to provide informal oral hearings for any cases so identified by the court.

## C. *Retroactive Class Relief*

The final issue in this appeal is whether the district court erroneously refused to amend the class that it previously certified in November 1977, during the first phase of the litigation. That class includes all Part A and Part B beneficiaries who have been denied Medicare claims of under $100 since March 1976. Although the Department did not challenge this certification by filing a protective cross-appeal during *Gray Panthers I,* on remand it asked the district court to exercise its discretion under Rule 60(b)(6) or Rule 23(c)(1) and to amend the class in two ways: by granting relief only prospectively, rather than retroactively, to all members of the class; and by removing Part A claimants from the class.

In a preliminary order, the district court found no extraordinary circumstances justifying amendment of its class certification under Rule 60(b)(6) and no authority to amend the class under Rule 23(c)(1). Alternatively, the court decided that manageability problems associated with retroactive class relief could best be handled through the method chosen to notify class members of potential relief. This order was incorporated into the court's final decision, and

formed the basis for the one-time-only, direct mail notification required under that judgment. *See supra* pp. 30–31; JA 153, 600–02, 607–08.

The Department appeals this order of retroactive relief, arguing that the district court misconstrued its authority under Rule 23(c)(1) and abused its discretion by not precluding such relief given the immense burdens that it inevitably places on the Medicare system. The Gray Panthers, emphasizing the Department's failure to appeal the class certification during *Gray Panthers I,* argue that a "decision on the merits" was reached in our first opinion, and that Rule 23(c)(1) therefore does not allow for amendment of the class when the only remaining issue is the remedy to be provided. Moreover, they note, application of "law of the case" doctrine should preclude the court from re-examining the class certification.

■ In addressing these conflicts, it is useful to narrow the issues that must be decided. First, the Department does not challenge the district court's conclusion that, if Rule 60(b)(6) provides the only basis for amending the class, then there exist no "extraordinary circumstances" justifying such an amendment. *See* JA 154–56 (citing *Ackermann v. United States,* 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950)); *Good Luck Nursing Home, Inc. v. Harris,* 636 F.2d 572, 576–78 (D.C.Cir.1980). Second, we do not believe that law of the case doctrine is directly applicable to the class certification in the context of this litigation. For a lower court to be bound by law from a prior appeal, the disputed legal issue must actually have been decided, either expressly or by necessary implication, by the appellate court in its previous opinion. *See Maggard v. O'Connell,* 703 F.2d 1284, 1289 (D.C.Cir.1983) (citing *City of Cleveland v. FPC,* 561 F.2d 344, 346–48 (D.C.Cir.1977)). Our previous opinion neither mentioned the prior class certification nor decided its validity *sub silentio,* and thus amendment of the class by the district court was not foreclosed on these grounds.

Thus, the only remaining issue is whether the district court misinterpreted its authority under Rule 23(c)(1), which provides that a class certification order "may be altered or amended before the decision on the merits." Fed.R.Civ.P. 23(c)(1). The Department, relying heavily on *Blake v. City of Los Angeles,* 595 F.2d 1367, 1385–86 (9th Cir.1979), *cert. denied,* 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980), argues that our prior remand for further proceedings deprived the case of finality for purposes of Rule 23(c)(1), and therefore allowed the district court to exercise its discretion under that provision. *See also Weil v. Investment/Indicators, Research & Management, Inc.,* 647 F.2d 18, 25–27 (9th Cir. 1981); *Griffin v. Harris,* 571 F.2d 767, 773 (3d Cir.1978); *McCarthy v. Kleindienst,* 562 F.2d 1269, 1276 (D.C.Cir.1977). The Gray Panthers, relying on the Department's failure to challenge the class certification when it was first issued or during the first appeal, argue that these prior cases are distinguishable from the present situation because they involved class certifications that were continuously opposed by the defending parties. Alternatively, even if the district court retained its discretion to amend the class under Rule 23(c)(1), the Gray Panthers note that the court properly exercised that discretion when refusing to amend the class.

We need not resolve this debate or determine precisely whether the district court retained its Rule 23(c)(1) discretion, however. Under the particular facts of this case, both the class previously certified and the retroactive relief ordered by the district court have been framed in terms of years covered by the respective orders. That both focus on which prior years should be included, however, does not mean that final decision as to one necessarily forecloses modification of the other. Thus, it does not matter whether the district court retained its Rule 23(c)(1) discretion in this case; even if it did not, the court retains its discretion to determine the precise contours of relief necessary to remedy the due process violation.

During the prior remand, the district court concluded that retroactive relief providing informal oral hearings to all members of the class dating back to March 1976 was the appropriate remedy. To accommodate the management concerns of the Department, the court approved a notification scheme that would place the initial burden of providing relevant information on potential class members. Although full retroactive relief limited by requiring particular information as a response to a class notice seems to be a reasonable accommodation of the competing interests, we need not decide that issue at this stage of the litigation.

■ Given the significant changes that this opinion requires in the relief afforded to the plaintiff class, the district court retains its equitable discretion during the next remand to fashion relief in a reasonable way. After determining which Medicare claims for under $100, if any, require informal oral hearings, the court, in its discretion, may order retroactive relief and may determine how those beneficiaries eligible for relief will be notified and identified. Once it is determined that retroactive relief should be ordered, the court may choose among several alternatives to define the scope of that relief. That is, retroactive relief may encompass all members of the certified class, members of the class beginning with the date suit was filed, *see Pope v. Railroad Retirement Board,* 672 F.2d 972, 976 (D.C. Cir.1982), members of the class beginning with the date the class was certified, or perhaps members of the class beginning with the date the Secretary was ordered to maintain accurate records about the class. *See Pope,* 672 F.2d at 975 (citing *Shannon v. United States Civil Service Commission,* 444 F.Supp. 354 (N.D.Cal.1977), *modified,* 621 F.2d 1030 (9th Cir.1980), for four criteria to be considered when making this choice). After this last date, however, the Department had reasonable notice that it should maintain records about all subsequent class members, and therefore it cannot rightfully complain about the burdens resulting from such retroactive relief. Moreover, given that our holding today does not require that

informal oral hearings be provided to all Part B claimants, the overall burden on the Department should be greatly diminished.

As for affected Medicare claimants under Part A, the district court refused to order any changes to the written notice forms used under that program, and the Gray Panthers have not appealed that decision. We remand to the district court for redetermination of whether the members of the class under Part A require informal oral hearings and, if so, whether that relief should be applied retroactively.

CONCLUSION

At the end of *Gray Panthers I,* we directed the parties to assist the district court in formulating an order that would meet both the dictates of due process and the administrative concerns of the Department. Because we find it necessary to return these proceedings to the district court once again, that admonition is even more applicable today. With the utmost cooperation of the parties, beneficiaries under the Medicare program will soon be receiving the process to which they are due.

*It is so ordered.*

MacKINNON, *Senior Circuit Judge* (concurring specially):

While I agree with most of the statements in the opinion for the court, I believe that they constitute only guidance for the district court and do not dictate the precise relief to be ordered. The purpose of this remand is to allow the district court in the first instance to fashion adequate notice and hearing procedures. I write only to emphasize that we are only dealing with claims involving less than $100 and, therefore, that given the improved notice, written review, and the telephone system which have been proposed, informal oral hearings may not be necessary.

As I review *Gray Panthers v. Schweiker (Gray Panthers I),* 652 F.2d 146 (D.C.Cir. 1981), it does not mandate the imposition of informal oral hearings. Instead, the opinion for the court gives broad, general guidance regarding the procedures which would

satisfy due process. In *Gray Panthers I,* the court recognized that "[i]n deciding if the totality of a procedure meets [the] core requirements of due process, no component of a procedure can be analyzed independently of the others." *Id.* at 165. On remand, the district court should consider the "totality" of the proposed procedures when considering the necessity of informal oral hearings.

Finally I would suggest that if the district court is uncertain about requiring informal oral hearings, the court might consider the possibility of not ruling finally thereon until the other new procedures have been in place for a year or two. The court can then make an evaluation as to whether informal oral hearings are in fact *necessary* for claims involving under $100.